MAE BUTTS, Appellee, v. WESLEY BUTTS, Appellant.

**DIVORCE:** Cruelty — Evidence — Sufficiency. Evidence reviewed, and held sufficient to sustain the finding of the court in granting the wife a divorce on the ground of cruel and inhuman treatment, and in dismissing husband's cross-petition on the ground of adultery.

*Appeal from Harrison District Court.*—SHELBY CULLISON, Judge.

APRIL 8, 1919.

PLAINTIFF brought her action for divorce on the ground of cruel and inhuman treatment. Defendant filed a cross-petition, asking a divorce on the ground of adultery. After a full trial on the merits, the trial court granted the plaintiff a divorce, and the custody of the two children, with a small amount of alimony. The defendant appeals.—*Affirmed.*

*Cochran & Wolfe,* for appellant.

*J. A. Murray,* for appellee.

PRESTON, J.—The parties were married in November, 1913, and lived together as husband and wife until May, 1917. There were two children, one 3 years, and the other 18 months of age. Plaintiff was 24 years of age, and defendant 23, at the time of the trial. It is argued by counsel for appellant that plaintiff's charge of cruelty is based solely on an imputation of unchastity; but the petition alleges that defendant has persisted in abusing plaintiff, by calling her vile names and cursing her violently; that he has charged her with being guilty of intimacy with other men, and of her own volition; that he has said he did not think he had married a whore. As said, defendant, in his answer and cross-petition, charged plaintiff with adultery, and by his testimony he sought to establish that fact. By an amendment to petition, plaintiff charges this, also, as a ground of cruelty, and alleges that the charge is untrue. Defendant also argues that all the acts of which plaintiff complains were after February 10, 1917, the time when defendant claims that plaintiff was guilty of adultery with one Babe. Doubtless defendant's charges and conduct in this respect were more pronounced after that date, but there is evidence that some of the acts charged were before. She testifies that, at one time, he called her a bitch, when she wanted him to get up to his breakfast; that she does not know how many times he called her that; that he said he would not get up for breakfast, and when he finally got up, he came into the kitchen and kicked the table over, and called her a damned bitch; that he said he didn't know he married a whore; that he said that one Kirby came to see her; that all this occurred before the Babe incident, except one time; that defendant got mad at her because she did not hear him call her, and threw a hammer through the

window, and said to her, "You damned old bitch, if you had been in there, I would have killed you;" that he called her a whore, the winter before. She says he would go out in a dark room at night, and stand behind her with a gun, and make her light matches, saying that there might be some man in there; that "he would just be cursing me, and I would go and do it." There is more of such conduct, but this is the general nature of it. Plaintiff is corroborated by other witnesses. Defendant denies plaintiff's testimony, and says they had no trouble until February 10, 1917; and others of his witnesses testify that the parties appeared to be living together harmoniously. As to the hammer throwing, defendant says he threw it at the pigs, and that the hammer accidentally went through the window, and that he was swearing at the pigs, and not at his wife. He doesn't remember lighting the matches, as testified to by her. Defendant and others, including a man by the name of Babe, had been shelling corn at defendant's place on February 10th, and defendant went to town, about 2 o'clock in the afternoon of that date, and left Babe on the place, and Babe was not there, when he returned at 6 o'clock. Defendant says that, when he came into the house on his return, the window curtains were down, and that she was rubbing her eyes; and he asked her what was the' matter, and she said that Babe came into the house and stayed for a time; and he says that, the next night, she told him that Babe had thrown her on the floor and forced her, and that she told him this voluntarily. Plaintiff's theory and testimony are that, when defendant returned home, he at once accused plaintiff of illicit relations with Babe, and that she denied it. We are satisfied, from a reading of the record, that there was no improper conduct between plaintiff and Babe, at the time in question. They both deny any improper conduct, and there are many circumstances in the record tending to show that defendant did not think the charges were true. We

shall not enumerate many of these. One circumstance is that he offered to take her back, in May, 1917, and wrote her a letter sending her his love, and asking her to come back. Defendant had never had any suspicion of his wife before, and the only circumstances upon which he based his charge were that the curtains were down, and that she appeared to have been crying. We think it was proper enough that the curtains should be down. It was after dark, and she was alone in the house, with her two small children. Defendant appears to be a man of ungovernable temper, and very jealous and suspicious. When he came into the house on the 10th, he immediately charged her with having had illicit relations with Babe. Her evidence so shows, and defendant substantially admits it on cross-examination, and in response to questions by the court. Plaintiff testifies that, on the night of the 10th, he kept accusing her of improper relations with Babe, and told her that he was going to make her peel off her clothes and go naked for two days if she did not say Babe committed adultery with her; that he threatened to send her to the penitentiary, and threatened to kill her, if she did not admit it; and that she still refused; and that finally, the next night, he compelled her to say that she had been raped by Babe, and compelled her to file information, charging Babe with rape. The grand jury did not indict. Defendant says that, later, she admitted to him that she had had voluntary intercourse with Babe. This she denies. Some of the neighbors testified to conversations and conduct of the parties in regard to the transaction of the 10th, and they generally say that he would take her off by herself to talk to her. One says that she started to tell what had occurred, and that he would not let her answer, except in answer to his questions. One of the witnesses called by defendant says that, when he went to the house, plaintiff was in a terrible condition; that she was wringing her hands, and said, "I am in so much trouble, I am in so

much trouble, this trouble is going to kill me, I don't know what to do;" and that, at one of these times, after defendant had gone over these things many times, defendant was cursing plaintiff; and that, directly, she looked up, and pointed her finger at the defendant, and said, "Joe, that is a lie,—everything I have been telling you is a lie, for he never touched me," and that defendant said to her, "You stick to what you been saying,—now you stick to that."

In the jealous and suspicious frame of mind defendant was in, a denial by her would not satisfy him, and it did not satisfy him; for she did repeatedly deny his accusations; and finally, the only way out, as it appeared to her, to protect herself, was to yield to his demand that she should say that she was raped. There is much more of the testimony,— it is a fact case. After reading the record, we are satisfied with the finding of the trial court. The decree is, therefore,—*Affirmed*.

LADD, C. J., EVANS and STEVENS, JJ., concur.